UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENISE Z.,<br><br>                Plaintiff,<br><br>     v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. CV 18-02032-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Denise Z. ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] For the reasons set forth below, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on September 2, 2014, alleging disability beginning November 11, 2011. See Dkt. 16, Administrative

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Record ("AR") 170-82. Plaintiff's initial application was denied on February 5, 2015. See AR 106-10. Plaintiff requested a hearing before an ALJ on March 5, 2015. See AR 116-17. Plaintiff attended the hearing on August 16, 2016, AR 31, and the ALJ denied her claim. AR 12-13. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. See AR 1. This action followed.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ: (1) properly determined Plaintiff's residual functional capacity ("RFC"); (2) properly rejected the medical opinion of Plaintiff's treating physician; and (3) properly discounted Plaintiff's testimony about her limitations. See Joint Stipulation (Dkt. 29; "JS") at 4. The Court will address the parties' arguments in a different order.

## III.
## ANALYSIS

A.  **Plaintiff's Symptom Testimony**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir 2014) (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. at 1014-15 (citation omitted).

Plaintiff testified about a range of symptoms caused by her impairments. On an average day, the pain she feels is about a five and on some days her pain is a ten, bad enough she stays in bed or goes to the emergency room. See AR

55-57. On an average day, she can sit for twenty minutes, stand for twenty-five minutes, walk half a block, and lift ten pounds. See AR 58. She has trouble both falling asleep and staying asleep, taking on average three hours a night to fall asleep and waking up five times a night. See AR 57. She averages five hours of restful sleep a night. See AR 57. Finally, due to side effects from her medication, Plaintiff gets drowsy and has blurred vision. See AR 58.

The ALJ identified three reasons for discounting Plaintiff's testimony. First, the ALJ noted that Plaintiff's testimony was not entirely consistent with the medical evidence. See AR 21. The ALJ also noted that Plaintiff's activities of daily living were not consistent with her testimony. See id. Finally, the ALJ noted that Plaintiff had not received any recent treatment for some of the impairments she described as causing her symptoms. See id.

As for the objective medical evidence, the ALJ reviewed Plaintiff's MRI results and the consulting examiner's findings about Plaintiff's back condition. See AR 20. The ALJ also reviewed the examiner's findings about Plaintiff's wrist limitations related to her history of carpal tunnel syndrome. See id. These findings support the ALJ's conclusion that Plaintiff's medical evidence was not consistent with her testimony. And while a lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility, it is nonetheless a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As for Plaintiff's daily activities, the ALJ also reviewed Plaintiff's testimony in which she indicated that she does some housework, helps get her children ready for school, drops them off, and independently bathes and dresses herself. See AR 21. More importantly, Plaintiff reported to a physical therapist that she was independent in all aspects of daily living but needed assistance of family members with moderate and heavy household chores. See AR 433. "Engaging in daily activities that are incompatible with the severity of

symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). While the Social Security Act "does not require that claimants be utterly incapacitated for benefits," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), there was substantial evidence in the record to support the ALJ's finding that Plaintiff's testimony about her limitations did not match her reported daily activities.

The ALJ also discounted Plaintiff's testimony about the limitations caused by her carpal tunnel syndrome due to her lack of any recent treatment, noting that Plaintiff had not had any physical therapy since 2012. See AR 21. A conservative course of treatment can be a clear and convincing reason for discounting a claimant's symptom testimony. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Here, even if the lack of treatment undermined only that portion of Plaintiff's testimony related to her hand/wrist limitations, it nonetheless was a clear and convincing reason for discounting Plaintiff's testimony.

A different ALJ may have found Plaintiff more credible, but this Court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Remand is not warranted on this claim of error.

**B.  Treating Physician's Opinion**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim, 763 F.3d at 1160. When a treating or examining physician's opinion is uncontroverted by another doctor, it may

be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Garrison, 759 F.3d at 1012 (citations and quotations omitted).

Here, Dr. Salvatore Danna completed a physical RFC questionnaire on August 15, 2016. See AR 545-49. Dr. Danna opined that Plaintiff could stand/walk around two hours and sit about four hours in a workday. See AR 547. He also opined that Plaintiff would need between one and three unscheduled breaks a week, for twenty minutes at a time as well as the ability to shift between shitting, standing, and walking at will. See AR 547. He also opined Plaintiff would be absent from work about four days a month due to her impairments. See AR 548.

The ALJ characterized Dr. Danna's opinion as limiting Plaintiff to "less than sedentary work." AR 21. The ALJ gave Dr. Danna's opinion "little weight," stating that "it is unclear how long Dr. Danna has been treating the

5

claimant and how familiar [he] is with her history." Id. But the record contains evidence that Dr. Danna began seeing Plaintiff at least as early as March 5, 2015, almost 18 months before his August 15, 2016 opinion. See AR 431. Dr. Danna's treatment notes from March 5, 2015 discuss the results of an EMG and nerve conduction velocity test performed on Plaintiff's legs. See id. Thereafter, Dr. Danna continued to see Plaintiff on a regular basis for the next 17 months, and administered steroid injections in April 2015, August 2015, September 2015, February 2016, and June 2016. See AR 417-29. If anything, the record of Dr. Danna's treatment history supports giving more rather than less weight to Dr. Danna's opinion. See 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.").

The ALJ also stated that Dr. Danna's opinion was "inconsistent with the recent objective findings, showing essentially mild degenerative disc disease in the lumbar spine." AR 21. The Court cannot agree that there is substantial evidence to support this conclusion. The Court is particularly concerned that the ALJ cited Plaintiff's hearing testimony for a back surgery that supposedly improved Plaintiff's back condition. See AR 20 (stating that "[i]t appears the claimant underwent surgery" for significant degenerative lumbar spine findings reflected in an August 2013 MRI). But the Court finds no such testimony, as the only discussion of surgery is limited to a prospective surgery. See AR 60. And nothing else in Plaintiff's record contains any reference to a surgery, including various treatment records describing Plaintiff's treatment history. The Court's concern is exacerbated because the ALJ did not provide a

"detailed and through summary of the facts and the conflicting clinical evidence," Garrison, 759 F.3d at 1012, and instead only presented the evidence that favored a non-disability determination. The ALJ did not discuss the EMG results cited by Dr. Danna or his finding of "mild partial denervation at the L5-Sl nerve root level consistent with lumbar stenosis and nerve root compression with radiculopathy and partial mild denervation." AR 431. Nor did the ALJ discuss Dr. Danna's examination findings, where he found that "[t]he back . . . has severe spasm and a straight leg raising is positive on the right and negative on the left. The reflexes are absent at the ankle, 1+ at the knee, 2+ in upper extremities. There is a sensory dysesthesia of L5-S1 distribution bilaterally present, but no motor deficit." AR 429. Two months before his August 2016 opinion, Dr. Danna found that Plaintiff's most recent X-rays were consistent with arthritis and nerve root compression. AR 418.

Finally, the ALJ stated that Dr. Danna's opinions were inconsistent with Plaintiff's activities of daily living. See AR 21. But as noted above, Dr. Danna found that Plaintiff could stand/walk for about two hours and sit for about four hours. See AR 547. These limitations are not inconsistent with the daily activities described by Plaintiff, such the ability to engage in light housework, cook light meals, and occasionally go to the grocery store. See AR 36-37, 44. It is also not inconsistent with being independent with daily activities but needing help with moderate and heavy household chores. See AR 433. Therefore, any inconsistency with Plaintiff's daily activities was not a specific and legitimate reason to reject the specific limitations offered by Dr. Danna.

Reviewing the decision based on the reasoning and factual findings made by the ALJ, see Bray v. Comm'r of SSA, 554 F.3d 1219, 1125-26 (9th Cir. 2009), and finding that the ALJ failed to account for conflicting evidence and lacked evidentiary support for a portion of his findings, the Court concludes the ALJ's determination that Dr. Danna's opinion was due little

weight lacked substantial evidence. See Garrison, 759 F.3d at 1012. Remand is warranted on this claim of error.

**C.    Plaintiff's RFC**

A plaintiff's "residual functional capacity" is the most a plaintiff can still do despite her limitations. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. 20 C.F.R. §§ 404.1545(a)(1)-(2), (e), 416.945(a)(1)-(2), (e). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. Id. §§ 404.1527(d)(2), 416.927(d)(2). An RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id. §§ 404.1527, 416.927.

In 2011 and 2012, an orthopedist and qualified medical evaluator for California workers' compensation, Dr. Mark Silver, opined that Plaintiff should "avoid repetitive use of her right hand and wrist" due to her carpal tunnel syndrome. See AR 341, 348. The ALJ gave these opinions "significant weight," finding the limitations "to still hold true" four years later. AR 21. Accordingly, when formulating Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with several additional limitations, including a limitation to using the right hand for frequent fingering. See AR 19 ("She can use the right upper extremity for frequent fingering.").

Plaintiff argues that the ALJ did not account for Dr. Silver's limitation against repetitive use of Plaintiff's right hand and wrist in the RFC. See JS at 5.

8

Resolving this argument would compel the Court to wade into the semantics of whether "frequently" and "repetitively" are synonymous in this context. Many courts have held that "frequent" and "repetitive" are not synonymous and upheld an ALJ's finding that a claimant could perform "frequently" what a doctor recommended against doing "repetitively." See, e.g., LeFevers v. Comm'r of Soc. Sec., 476 F. App'x 608, 911 (6th Cir. 2012); De Munoz v. Comm'r, No. 18-00483, 2019 WL 1243718, at *7 (E.D. Cal. Mar. 18, 2019). But other courts have declined to reach such a conclusion. See Muccigrosso v. Colvin, No. 14-01370, 2015 WL 4041168, at *4 (D. Or. June 30, 2015). And in a slightly different context, the Ninth Circuit has recognized that repetitively "appears to refer to a qualitative characteristic—i.e., how one uses his hands, or what type of motion is required—whereas 'constantly' and 'frequently' seem to describe a quantitative characteristic—i.e., how often one uses his hands in a certain manner." Gardner v. Astrue, 257 F. App'x 28, 30 n.5 (9th Cir. 2007) (emphasis removed).

Because remand is necessary to address Dr. Danna's opinion, the Court will not decide whether the ALJ erred in formulating Plaintiff's RFC. Instead, on remand the ALJ should clarify how any RFC takes into account Dr. Silver's limitation against repetitive use.

**D.   Remand Is Warranted**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179; Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the

9

record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003), Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to properly consider the opinion of Dr. Danna and conduct any other proceedings as warranted.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and REMANDED.

Dated: November 4, 2019

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge